RECEIVED

NOV 2 0 2008

AT 8:30_____
WILLIAM T. WALSH —M
CLERK

<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BORIS BORETSKY,                    :
                                   :     Civil Action No. 08-2265 (GEB)
              Plaintiff,           :
                                   :
         v.                        :     **OPINION**
                                   :
JON CORZINE, et al.,               :
                                   :
              Defendants.          :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Boris Boretsky
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625-0861

**BROWN, JR.**, Chief Judge

     Plaintiff Boris Boretsky, a prisoner confined at New Jersey
State Prison in Trenton, New Jersey, seeks to bring this action
alleging violations of his constitutional rights.

     At this time, the Court must review the Amended Complaint
[Docket Entry No. 50] to determine whether it should be dismissed
as frivolous or malicious, for failure to state a claim upon
which relief may be granted, or because it seeks monetary relief
from a defendant who is immune from such relief.

I.   <u>BACKGROUND</u>

     The following factual allegations are taken from Plaintiff's
Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on April 3, 2008, he was confined in the general population at New Jersey State Prison when he was told to pack up because he was being moved.  Plaintiff alleges that he was moved to Unit 2-A, the "isolation" unit,[1] without being given notice, a reason, or a hearing.

Plaintiff alleges that, as a result of the move, he is no longer able to attend morning prayers and Shabbat on Thursdays. He alleges that he is no longer able to attend paralegal classes. Plaintiff alleges that he suffers from a documented heart condition and that the stress caused by the move is detrimental to his physical and psychological health.  He also alleges that he is deprived of contact with other prisoners.

Plaintiff alleges that he asked why he was moved to "isolation" and was told by Defendant Ricci that the order came from the Attorney General's office.  Plaintiff alleges that on April 9, 2008, at the Classification Committee hearing, he was told the same thing.  Plaintiff alleges that on April 30, 2008, Defendants Mee and Bell also told him that the instruction to place him in "isolation" came from the Attorney General's office. Plaintiff alleges that his transfer to "isolation" violates his right not to be deprived of liberty without due process.

---

[1] New Jersey law provides for several types of "close custody" units.  See N.J.Admin.Code 10A:5-1.1 et seq.  It is not clear from Plaintiff's Amended Complaint to what type of close custody unit he was moved.

2

Finally, Plaintiff alleges that Defendants Hayman, Ricci, and Mee failed to properly classify him and placed him in the allegedly unconstitutional "isolation."

Plaintiff also alleges that the general conditions of his confinement are unconstitutional because: (1) he receives insufficient outdoor recreation, educational programs, and job opportunities; (2) the facility is cleaned by unsupervised individuals using unlabeled chemical cleaning products without safety instructions, resulting in "fumes" wafting through the vents; (3) the facility is "unfit for human habitation" because of toxins (including, for example, lead and asbestos), sewage floods, unclean air and inadequate ventilation, and a lack of hot running water in cells; (4) he has been housed in cells with the walls covered with filth and human waste; (5) the inadequate outdoor recreation deprives Plaintiff of adequate vitamin D, which can lead to various health problems; (6) the water contains unsafe levels of arsenic, rust, and chlorine; (7) the facility is infested with rodents.  Plaintiff alleges that the conditions of the facility have caused him "skin iritation and rash, sore throats, headaches, tightness in their chest, bloody nose, sinus infection, wheeze, middle ear infection, difficulty breathing and other respiratory ailments, mucous, migraines, eye irritation, high blood pressure, slow down of the heart's electrical signal causing a slow heart rate (specifically second or third degree

3

heart block), asthma or asthma like lung disease, tiredness, dizziness, shortness of breath."

Plaintiff alleges that the defendants have misplaced and/or confiscated his legal materials, and have frequently cancelled his law library time, causing him to lose cases.  Plaintiff does not provide any further information regarding the manner in which these events caused him to lose cases or which cases he has lost.

Plaintiff names as defendants Governor Jon Corzine, Attorney General Anne Milgram, Department of Corrections Commissioner George W. Hayman, New Jersey State Prison Administrator Michelle R. Ricci, Associate Administrator Donald Mee, Jr., Assistant Superintendent James Drumm, Assistant Superintendent Charles Warren, Assistant Superintendent Jeffrey Bell, Executive Assistant Brenda Smith Hutton, Supervisor of Education Thomas Dechan, Assistant Supervisor of Education Deniece Gray, Lt. Emrich, and Remedy Forms Coordinator Frank Bruno.

Plaintiff alleges that all of the defendants conspired to violate his constitutional rights and that such conduct violated the Racketeering and Corrupt Organization Act (RICO), 18 U.S.C. § 1961.

Plaintiff alleges that he has pursued administrative grievance procedures with respect to the conditions of the facility.  More specifically, he alleges that he has complained

4

directly to Defendants Donald Mee, Jr., Lt. Emrich, and Frank Bruno, who allegedly took no remedial action.[2]

Plaintiff alleges that Defendants Corzine, Hayman, Ricci and Mee failed to properly train and supervise the other defendants.

Plaintiff seeks injunctive relief and monetary damages.   In addition, Plaintiff asks for the appointment of counsel.[3]

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.   See 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

---

[2] This Court does not construe the allegation that certain defendants failed to investigate Plaintiff's administrative remedies as an attempt to assert a constitutional violation. "'[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.'"   Graw v. Fantasky, 68 Fed.Appx. 378, 2003 WL 21523251 (3d Cir. 2003) (unpubl.) (quoting unpubl. District Court opinion) (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989)).   Cf. Burnside v. Moser, 138 Fed.Appx. 414, 416, 2005 WL 1532429 (3d Cir. 2005) (prisoners do not have a constitutionally protected right to a prison grievance process); Lewis v. Williams, 2006 WL 538546, *7 (D. Del. 2006) (failure to investigate a grievance does not raise a constitutional issue) (collecting cases).

[3] Plaintiff alleges generally that certain defendants were motivated by a desire to "entice campaign contributions."   This Court can discern no constitutional claim arising out of any such alleged motivation.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). See also Morse v. Lower Merion School Dist., 132 F.3d at 906 (a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions").

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

In addition, a complaint must comply with the Federal Rules of Civil Procedure.  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 10(b) provides:

> A party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  ...  If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense.

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>     (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; <u>and</u>
>     (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added). <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007).

### III.   <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

8

Supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

## IV.   ANALYSIS

A.   Eighth Amendment "Conditions" Claim

Plaintiff alleges that he is subjected to a host of unhealthful conditions, including inadequate recreation, educational programs, and job opportunities, toxins in the water and the environment, sewage in the facility, rodent infestation, etc.

9

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Id. at 31.

The allegations of the Amended Complaint are sufficient to permit this claim to proceed as against all named defendants, as Plaintiff alleges that all defendants are personally and knowingly responsible for some or all of these conditions.

B.   Freedom-of-Religion Claims

Plaintiff alleges that the curtailment of his religious observances resulting from his placement in "isolation" has deprived him of his right to free exercise of his religion under the First Amendment and various federal statutory provisions.

1.   First Amendment Free-Exercise Claim

The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides, inter alia, that

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof... ."  U.S. Const. amend. I.   "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  "All prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and Fourteenth Amendment.'"   Small v. Lehman, 98 F.3d 762, 765 (3d Cir. 1996) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)).

Once a sincerely held religious belief is demonstrated, an inmate may establish that a prison regulation or practice violates the right to free exercise of religion by showing that it violates the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and O'Lone, 482 U.S. at 349.[4] The standards delineated in Turner and O'Lone indicate that when

---

[4] More recently, in Employment Division, Dept. of Human Resources v. Smith, 494 U.S. 872, 878-79 (1990), the Supreme Court held that neutral laws of general applicability that incidentally impinge on religious practices do not violate the Free Exercise Clause.  No federal Court of Appeals has yet held that the Smith test supplants the Turner and O'Lone analysis in the prison context.  See Levitan v. Ashcroft, 281 F.3d 1313 (D.C. Cir. 2002) and cases cited therein.  See also Fraise v. Terhune, 283 F.3d 506, 515 n.5 (3d Cir. 2002) (acknowledging the issue, but declining to reach it in the absence of either party urging application of Smith).

a prison regulation or practice encroaches upon prisoners' rights
to free exercise of their religion, the regulation is valid if it
is reasonably related to a legitimate penological interest.
Turner, 482 U.S. at 89; O'Lone, 482 U.S. at 349.

Plaintiff alleges that he has been deprived of his First
Amendment right to participate in religious exercises as a result
of his placement in "isolation." It is not possible to complete
the Turner analysis based solely upon the allegations of the
Amended Complaint. Accordingly, this claim may proceed as
against those persons whom Plaintiff alleges are responsible for
his placement in isolation: Defendants Anne Milgram, George W.
Hayman, Michelle R. Ricci, Donald Mee, Jr., and Jeffrey Bell.

    2.    Statutory Claims

Petitioner alleges that the limitations on his ability to
exercise his religion, arising from his placement in "isolation,"
violate the Religious Freedom Restoration Act and the Religious
Land Use and Institutionalized Persons Act.

Until recently, the appropriate test used to challenge a
violation of the right to free exercise of religion was that set
forth in the Religious Freedom Restoration Act of 1993 ("RFRA"),
42 U.S.C. §§ 2000bb-1 to 2000bb-4. RFRA required those
governmental actions which substantially burden the free exercise
of religion to satisfy a "compelling interest" test. 42 U.S.C.
§ 2000bb-1(b). However, the United States Supreme Court held

12

that RFRA was unconstitutional because Congress exceeded its
enforcement powers under section five of the Fourteenth Amendment
in enacting RFRA.   City of Boerne v. Flores, 117 S. Ct. 2157
(1997).   Accordingly, Plaintiff's RFRA claim will be dismissed
with prejudice.

In addition, the Religious Land Use and Institutionalized
Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5, protects the
exercise of religious freedom by prisoners confined in
institutions that receive federal funding.

> No government shall impose a substantial burden on the
> religious exercise of a person residing in or confined
> to an institution, ... even if the burden results from
> a rule of general applicability, unless the government
> demonstrates that imposition of the burden on that
> person –
> (1) is in furtherance of a compelling governmental
> interest; and
> (2) is the least restrictive means of furthering that
> compelling governmental interest.

42 U.S.C. § 2000cc-1.

A "substantial burden exists where: "(1) a follower is
forced to choose between following the precepts of his religion
and forfeiting benefits otherwise generally available to other
inmates versus abandoning one of the precepts of his religion in
order to receive a benefit; or (2) the government puts
substantial pressure on an adherent to substantially modify his
behavior and to violate his beliefs."   See Washington v. Klem,
497 F.3d 272, 280 (3d Cir. 2007).

Nevertheless, as the Supreme Court has noted, RLUIPA is <u>not</u> to be read "to elevate accommodation of religious observances over an institution's need to maintain order and safety."  <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 722 (2005).  Instead, Congress intended for courts to give "'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'"  <u>Id.</u> at 722-23 (quoting S.Rep. No. 103-111, at 10, U.S.C.C.A.N. 1993, pp. 1892, 1899, 1900).

Again, it is not possible to determine solely from the allegations of the Complaint whether the limitations on Plaintiff's religious activities are permitted by RLUIPA. Accordingly, this claim will be permitted to proceed as against those defendants whom Plaintiff alleges are responsible for his placement in isolation: Anne Milgram, George W. Hayman, Michelle R. Ricci, Donald Mee, Jr., and Jeffrey Bell.[5]

C.   <u>The Due Process Claim</u>

Plaintiff alleges that his transfer to the "isolation" unit deprives him of liberty without due process.

---

[5] The Court of Appeals has not yet reached the question whether individuals may be liable for monetary damages under the RLUIPA.  <u>See</u> <u>Brown v. D.O.C. PA</u>, 265 Fed.Appx. 107, 111, 2008 WL 435481, *3 (3d Cir. 2008).

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995).

States, however, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not

15

"atypical and significant hardships" in which a state conceivably might create liberty interest).

The Supreme Court has noted that, "[i]n <u>Sandin</u>'s wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 223 (2005) (finding confinement in Ohio's "supermax" prison to be an "atypical and significant" hardship).

Where a liberty interest in avoiding "atypical and significant hardship" conditions of confinement is established, the question of what process is due is determined by reference to the framework set forth in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976).

Here, Plaintiff contends that he has been placed in "isolation" without notice or a hearing,[6] and that, while in "isolation," he is unable to participate in religious services or attend classes.  He also alleges that he cannot have contact with anybody in the general population and that, whenever he moves from the isolation unit, an announcement is made to halt all other inmate and civilian movement in the area.  It appears that Plaintiff's placement in "isolation" is for an indefinite period of time.  Plaintiff alleges that the order to place him in

---

[6] The Court notes that, in contradiction, Plaintiff references a Classification Committee hearing that took place six days after his transfer to "isolation."

"isolation" came from the Attorney General's office and that
defendants Michelle R. Ricci, Donald Mee, Jr., and Jeffrey Bell
have told him that they are not able to change his placement.
Plaintiff also alleges that Defendants George W. Hayman, Michelle
R. Ricci, and Jeffrey Mee failed to properly classify him.

These allegations are sufficient to permit this claim to
proceed as against Defendants Anne Milgram, George W. Hayman,
Michelle R. Ricci, Donald Mee, Jr., and Jeffrey Bell.

D.    Access-to-Courts Claim

The constitutional right of access to the courts is an
aspect of the First Amendment right to petition the government
for redress of grievances.  Bill Johnson's Restaurants, Inc. v.
NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional
guarantee of due process of law has as a corollary the
requirement that prisoners be afforded access to the courts in
order to challenge unlawful convictions and to seek redress for
violations of their constitutional rights.  Procunier v.
Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds,
Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also
Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)
(chronicling various constitutional sources of the right of
access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme
Court held that "the fundamental constitutional right of access

17

to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).

There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. ... [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished

to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." <u>Bounds</u>, 430 U.S. at 824-25, <u>clarified on other grounds</u>, <u>Lewis v. Casey</u>, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." <u>Reynolds v. Wagner</u>, 128 F.3d 166, 183 (3d Cir. 1997).

In addition, one alternative for providing prisoners meaningful access to the courts is the provision of counsel. <u>See e.g.</u>, <u>Bounds</u>, 430 U.S. at 828 (approving the provision of "adequate assistance from persons trained in the law"); <u>Rauso v. Zimmerman</u>, 2006 WL 3717785, *4 (M.D. Pa. 2006) (collecting cases); <u>Pressley v. Johnson</u>, 2006 WL 2806572, *5 (W.D. Pa. 2006) (collecting cases).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury."  See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, Plaintiff complains that he does not have regular access to the law library, that prison officials have confiscated his legal materials, that his legal telephone calls have been curtailed, and that he has lost cases.  Plaintiff has no freestanding right to visit the law library.  Nor does Plaintiff adequately allege that he has suffered "actual injury" in the constitutional sense; that is, he does not allege facts demonstrating that the defendants' actions have directly caused him to be unable to litigate an attack on his conviction or sentence or a challenge to his conditions of confinement.[7]  This claim must be dismissed without prejudice.

E.   "Conspiracy" Claims

Plaintiff alleges generally that the defendants were engaged in a "conspiracy" to deprive him of his constitutional rights and to retaliate against him.

---

[7] A check of the U.S. Courts Public Access to Court Electronic Records system reveals no litigation by Plaintiff other than this action and the pending interlocutory appeal. Similarly, a Westlaw search for cases involving Plaintiff revealed only this matter, which is ongoing, and Plaintiff's state criminal matters, in which he was represented by counsel.

In order to demonstrate a "conspiracy," "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 7000 (3d Cir. 1993), abrogated on other grounds, United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).  Agreement is the sine qua non of a conspiracy.

To state a claim for conspiracy under § 1983, a plaintiff must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events."  Hammond v. Creative financial Planning Org., 800 F.Supp. 1244, 1249 (E.D. Pa. 1992) (citing Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974)).

Here, Plaintiff has failed to allege any facts showing an agreement or plan formulated and executed by any of the Defendants to achieve a conspiracy.  Absent such allegations, Plaintiff's bald allegations of conspiracy are insufficient to state a claim.  See, e.g., Swanson v. Miller, 55 Fed.Appx. 871, 2003 WL 150046 (10th Cir. Jan. 22, 2003) (upholding dismissal of conclusory allegations of conspiracy).

In addition, Plaintiff has failed to allege facts demonstrating retaliation.  To prevail on a retaliation claim, a

plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 2001 WL 185120 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225). See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.  Plaintiff nowhere describes the constitutionally-protected activity in which he engaged, the adverse action which he suffered, or any facts suggesting that the undescribed protected activity was a motivating factor in the retaliation.  To the contrary, to the extent Plaintiff contends that the transfer to "isolation" is the retaliatory activity, he specifically states that he had enjoyed two years confinement in the general population of New Jersey State Prison "without incident."

For all the foregoing reasons, the conspiracy claim will be dismissed for failure to state a claim.

22

F.   <u>Failure-to-Supervise/Failure-to-Train Claim</u>

Where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train ... can fairly be said to represent official policy," <u>City of Canton</u>, 489 U.S. at 390, and that failure to train "actually causes injury," a supervisor may be held liable, <u>Id.</u>

In addition, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program
> in relation to the tasks the particular officers must
> perform.  That a particular officer may be
> unsatisfactorily trained will not alone suffice to
> fasten liability on the [supervisor], for the officer's
> shortcomings may have resulted from factors other than
> a faulty training program.  ...  Neither will it
> suffice to prove that an injury or accident could have
> been avoided if an officer had had better or more
> training ... .  Moreover, for liability to attach ...
> the identified deficiency in a city's training program
> must be closely related to the ultimate injury.

<u>Id.</u> at 390-91.  Plaintiff alleges nothing more than that a particular officials caused him injury, plainly an insufficient allegation upon which to base liability for failure to train. Accordingly, Plaintiff's failure to train claim must be dismissed for failure to state a claim.

G.   <u>RICO Claims</u>

Plaintiff describes his claims as arising, <u>inter alia</u>, under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.  The RICO statutes impose liability on persons who

finance or conduct affairs of otherwise legitimate enterprises by engaging in certain named "racketeering activity," e.g., murder, kidnapping, robbery, extortion, bribery, sale of narcotics, and gambling.  See 18 U.S.C. §§ 1961 and 1962.  The Court finds that the facts alleged in Plaintiff's complaint do not indicate that any Defendant has engaged in any of the activities proscribed by § 1961.  Accordingly, the RICO claims will be dismissed.

H.   Request for Appointment of Counsel

Indigent persons raising civil rights claims have no absolute constitutional right to counsel.  Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).  In determining whether to appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must have some merit in fact and law. ... If the district court determines that the plaintiff's claim has some merit, then the district court should consider the following factors:
>
> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;
> (6) whether the plaintiff can attain and afford counsel on his own behalf.
>
> [Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994).]  This list of factors is not exhaustive, but instead should serve as a guide post for the district courts.

> Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases. <u>Id.</u> at 157.

<u>Parham</u>, 126 F.3d at 457-58.

In considering the first factor, courts should consider "the plaintiff's education, literacy, prior work experience, and prior litigation experience." <u>Tabron</u>, 6 F.3d at 156. In addition, courts should consider whether the plaintiff has access to resources such as a typewriter, photocopier, telephone, and computer. <u>Id.</u>

"Where the legal issues are complex, it will probably serve everyone involved if counsel is appointed." <u>Parham</u>, 126 F.3d at 459 (citing <u>Tabron</u>, 6 F.3d at 156 and <u>Maclin v. Freake</u>, 650 F.2d 885, 889 (7th Cir. 1981) (per curiam) ("[W]here the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis.")).

In considering the ability of a plaintiff to investigate the facts, courts "should be aware that it may be difficult for indigent plaintiffs to understand the complex discovery rules." <u>Parham</u>, 126 F.3d at 460.

In considering the credibility factor, "courts should determine whether the case was solely a swearing contest." <u>Parham</u>, 126 F.3d at 460.

The necessity of an expert witness "weighs heavily in favor of appointment of counsel." Parham, 126 F.3d at 460. Finally, where other factors weigh in favor of appointment of counsel, evidence that a plaintiff has made extensive unsuccessful efforts to obtain counsel weighs heavily in favor of appointment. Parham, 126 F.3d at 461.

Analysis of these factors reveals that appointment of counsel is not appropriate at this time. As a preliminary matter, Plaintiff has presented some claims with merit in fact and in law. However, Plaintiff has demonstrated in his pursuit of this litigation thus far that he is well able to present his claims. It is not apparent, at this time, to what extent factual investigation or expert witnesses will be necessary. Plaintiff does not assert that he has made any attempt to retain counsel himself. The request for appointment of counsel will be denied without prejudice to Plaintiff or this Court revisiting this issue should circumstances change.[8]

## V.   CONCLUSION

For the reasons set forth above, certain claims are subject to dismissal, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim. However, because it is conceivable that Plaintiff may be able to supplement his pleading

---

[8] In any future request for appointment of counsel, Plaintiff should address specifically the Tabron factors.

26

with facts sufficient to correct the deficiencies noted herein with respect to some of those dismissed claims, the Court will grant Plaintiff leave to file a second amended complaint.[9] Plaintiff may <u>not</u> assert any new claims in any such second amended complaint.  An appropriate order follows.

Garrett E. Brown, Jr.
Chief Judge
United States District Court

Dated: 11/19/08

---

[9] Plaintiff should note that when an amended complaint is filed, the prior pleading no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the prior pleading, but the identification of the particular allegations to be adopted must be clear and explicit. <u>Id.</u>  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  <u>Id.</u>