NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BORIS BORETSKY,<br><br>             Plaintiff,<br><br>    v.<br><br>JON CORZINE, et. al,<br><br>             Defendants. | Civ. No. 08-2265(GEB)(DEA)<br><br>**MEMORANDUM OPINION** |

**BROWN, Chief Judge**

This matter comes before the Court upon plaintiff Boris Boretsky's ("Plaintiff") objection to Magistrate Judge Tonianne J. Bongiovanni's January 15, 2009 Report and Recommendation [Docket Entry No. 71]. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court having considered the parties' submissions, and for the reasons set forth below will: (1) overrule Plaintiff's objections; and (2) adopt Magistrate Bongiovanni's January 15, 2009 Report and Recommendation, as modified.

**I.    BACKGROUND**

On May 12, 2008, Plaintiff and approximately thirty-nine other prisoners filed a complaint against Jon Corzine, Michelle R. Ricci, Anne Milgram, George W. Hayman and several others (collectively, "Defendants") for alleged violations of their constitutional rights while incarcerated, among other claims. [Docket Entry No. 1]. On June 23, 2008, the Court

1

entered an order dismissing all co-plaintiffs from the instant action except for Plaintiff Boretsky, with the instruction that new cases would be opened for the enumerated co-plaintiffs. [Docket Entry No. 20].  The Court's Order also stated that within thirty days, each plaintiff, including Plaintiff Boretsky, could indicate his intent to proceed with his case by filing an amended complaint asserting his individual claims. [Docket Entry No. 20].

On July 7, 2008, Plaintiff and twenty-two co-plaintiffs together filed an amended complaint ("First Amended Complaint") [Docket Entry No. 24], which the Court dismissed on July 23, 2008 with leave to re-file separate complaints asserting their individual claims. [Docket Entry No. 41].  On August 1, 2008, Plaintiff filed another amended complaint ("Second Amended Complaint") in compliance with the Court's Order. [Docket Entry No. 50].  On November 20, 2008, the Court reviewed Plaintiff's Second Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted or because it seeks monetary relief from a defendant who is immune from such relief.  The Court dismissed certain of Plaintiff's claims with prejudice, others without prejudice, and allowed Plaintiff's claims under the First and Eighth Amendments as well as his Due Process claim to proceed.  (Opinion and Order [Docket Entry Nos. 63, 64]).[1]

In addition to the above mentioned submissions, Plaintiff also filed Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") on September 15, 2008. [Docket Entry No. 57].  In the Motion, Plaintiff requests that the Court issue a temporary

---

[1]Subsequent to the filing of the Report and Recommendation, Plaintiff filed another Amended Complaint on January 20, 2009 ("Third Amended Complaint"). [Docket No. 72]. After several motions for extensions of time to answer, several of the Defendants filed their Answer on April 14, 2009. [Docket No. 95].

restraining order and preliminary injunction enjoining the New Jersey Department of Corrections ("NJDOC") from "violating his rights under the First, Eight [sic] and Fourteenth Amendments to the U.S. Constitution and to immediately stop retaliating against him." (Motion at 1).

On January 15, 2009, Judge Bongiovanni filed her Report and Recommendation, [Docket Entry No. 71] and Plaintiff filed his objections thereto ("Objection") on January 28, 2009. [Docket Entry No. 83]. The Report and Recommendation and the Objection are now considered by this Court.

## II. DISCUSSION

### A. Standard of Review

Review of a Magistrate Judge's Report and Recommendation, as well as objections to it, is governed by Local Civil Rule 72.1. The rule provides that the Court "shall make a *de novo* determination of those portions [of the report and recommendation] to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." L. Civ. R. 72.1(c)(2). In conducting its review, the Court "may consider the record developed before the Magistrate Judge, making [its] own determination on the basis of that record." *Id.*; *see also State Farm Indem. v. Fornaro*, 227 F. Supp. 2d 229, 231 (D.N.J. 2002).

### B. Analysis

#### 1. Injunctive Relief Is Not Appropriate In This Case

As Judge Bongiovanni observed, "[T]he grant of injunctive relief is an extraordinary remedy. . . which should be granted only in limited circumstances." (Report and Recommendation at 3 (citing *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847

3

F.2d 100, 102 (3d Cir. 1988) (citing *United States v. City of Philadelphia*, 644 F.2d 187, 191 n.1 (3d Cir.1980)). As further noted in the Report and Recommendation, when ruling on a motion for a preliminary injunction, the court must consider the following factors: (1) the likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. (Report and Recommendation at 3 (citing *Opticians Ass'n v. Indep. Opticians*, 920 F. 2d 187, 191-92 (3d Cir. 1990)); *see also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms*. Co., 290 F.3d 578, 586 (3d Cir. 2002).

Plaintiff does not dispute the use of this framework in determining whether injunctive relief is appropriate. Instead, Plaintiff argues that injunctive relief is appropriate here because he has "produced sufficient evidence in support of all four factors that favor preliminary relief." (Objection at 2).

Further, "[t]he Court must also consider the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, which modifies the standards for granting injunctive relief to current inmates." *Leon v. Schaff*, No. 05-4296, 2007 U.S. Dist. LEXIS 76231, at *7 (Oct. 15, 2007). Under the PLRA, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief . . . ." *Id.* at *7-8 (quoting 18 U.S.C. § 3626(a)(2) (internal quotation marks omitted). Additionally, "a request for injunctive relief in the prison context must be viewed with great caution because of

4

the intractable problems of prison administration." *Id.* at 8 (quoting *Thorn v. Smith*, 207 Fed. Appx. 240, 241 (3rd Cir. 2006) (internal quotation marks omitted)).

### a. Likelihood Plaintiff Will Prevail at a Final Hearing

Plaintiff argues that he has met this first prong because "the law is clear" that Plaintiff has a "Constitutional Right to access to court, and to pursue a challenge to his criminal conviction" and because Defendants have "never denied the fact that they retaliated against . . . Plaintiff because of his involvement in a constitutionally protected activity, denied him access to court or subjected him to cruel and unusual punishment." (Objection at 2).

In the Report and Recommendation, Judge Bongiovanni correctly reasons that "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." (Report and Recommendation at 3-4 (citing *Punnett v. Carter*, 621 F.2d 578, 583 (3d. Cir. 1980)). Judge Bongiovanni then takes note of Plaintiff's declaration submitted in support of the Motion ("Declaration") and specifically, that Plaintiff alleges that: (1) Correctional Officer Davis ("C.O. Davis") harassed and retaliated against him for filing the underlying lawsuit; (2) C.O. Davis stole his laundry and refused to replace his underwear and as a result he has to wash his underwear daily; (3) Plaintiff asked C.O. Davis to let him out of his cell to perform his assigned institutional job and even though she appeared very annoyed, she did let him out; (4) Plaintiff ran a clothesline against his cell wall with permission from Defendant Ricci but that after Plaintiff asked C.O. Davis to allow him to leave his cell to perform his job, an hour later Plaintiff was written up with a disciplinary charge for having the clothesline on the wall and that this disciplinary charge was arbitrary and capricious and violated

due process; and (5) he was retaliated against by C.O. Davis and Sergeant Abrams for his involvement in constitutionally protected activity, namely the filing of the underlying action. (Objection at 4-5 (citing Decl. ¶¶ 5,6, 12-14, 20)). In his reply in support of the Motion, Plaintiff also alleges that he received Defendants' Opposition to the Motion several weeks after it was dated and argues that such a lag time is also a result of retaliation by C.O. Davis. (Pl.'s Rep. at 1 [Docket Entry No. 68]).

Judge Bongiovanni then notes that neither Plaintiff's Motion nor his supporting declaration provided sufficient evidence to conclude that he will likely prevail at the final hearing. (Report and Recommendation at 5). Specifically, Judge Bongiovanni reasons:

> In his Motion papers, Plaintiff simply provides a conclusory statement that what defendants are doing is wrong and then provides three case citations with no explanation as to the holdings in those cases and their relevance to the matter at hand. Further, Plaintiff's declaration also fails to provide this Court with sufficient information or evidence to cause the Court to conclude that Plaintiff will likely prevail at the final hearing. His declaration contains minimal facts without any connection to his claims in the underlying action or explanation outlining how those facts support his claim that he will likely prevail at the final hearing. His declaration appears to primarily focus on alleged retaliation by the Defendants and does not appear to contain facts pertaining to his Eighth Amendment conditions of confinement claim, his First Amendment Free Exercise claim, his Religious Freedom Restoration Act claim, his Religious Land Use and Institutionalized Persons Act claim; or his Due Process claim arising out of his transfer to "isolation."

(Report and Recommendation at 5).

A review of the record demonstrates that Judge Bongiovanni appropriately held that Plaintiff has failed to make prima facie case showing a reasonable probability that he will prevail at a final hearing. As Judge Bongiovanni notes, the only evidence put forth by Plaintiff related to

the alleged retaliation by Defendants.  (*Id; see also* Decl. [Docket Entry No. 57]).   Specifically, Plaintiff alleges that C.O. Davis and Sergeant Abrams retaliated against him for filing the instant action by not permitting him to leave his cell and by giving him a disciplinary charge for hanging a clothesline in his cell.  (*Id.*, ¶¶  5,6, 12-14, 20 (citing Decl.)).

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990) (citing  *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981)).  To prevail on a retaliation claim, a prisoner-plaintiff must demonstrate that: (1) the conduct which led to the alleged retaliation was constitutionally protected; and (2) he suffered, at the hands of a state actor, an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 389 (6th Cir. 1999); *Drexel v. Vaughn*, No. 96-3918 1998 U.S. Dist. LEXIS 4294, at *7 (E.D. Pa. Apr. 1, 1998)); (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  Once a prisoner-plaintiff establishes these two criteria, he must then prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  Then, the burden shifts to the defendant "to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity."  *Id.* (citing *Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287).

"It is well established that [there is] a constitutionally protected right to file non-sham

7

lawsuits, grievances, or other petitions with the courts and other government bodies under the First Amendment's Petition Clause." *Uwalaka v. State*, No. 04-2973, 2005 U.S. Dist. LEXIS 28121 at *12 (citing *San Filippo v. Bongiovanni*, 30 F.3d 424, 434-35 (3d Cir. 1994)).  Thus, Plaintiff's allegations regarding retaliation relate to his First Amendment Claim.[2]

The Court holds that Plaintiff has failed to demonstrate that he would likely prevail at a final hearing on his retaliation claim.  Specifically, Plaintiff has failed to put forth any evidence that the "substantial or motivating factor" in C.O Davis and Sergeant Abrams' decision to discipline him or C.O. Davis' alleged withholding of Plaintiff's legal mail was to retaliate against Plaintiff for filing the instant lawsuit.  *Rauser*, 241 F.3d at 333 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  Indeed, as Defendants note in the opposition to Plaintiff's motion, Plaintiff has failed to put forth any evidence that C.O. Davis and Sergeant Abrams even knew that Plaintiff had instituted this action. (Def.'s Opp. to Motion at 4).  As such, Plaintiff has not demonstrated a likelihood that he will prevail at a final hearing on his retaliation claim.

With respect to Plaintiff's Fourteenth Amendment claim, courts have recognized that a prisoner-plaintiff may bring suit pursuant to this Amendment for the act of filing false disciplinary charges.  *See e.g. Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986) *cert. denied,*

---

[2]Although Plaintiff does not explicitly make this connection between his retaliation claim and First Amendment claim, it is a "well-established principle that a pro se prisoner's pleadings should be held to less stringent standards of specificity and their complaints construed liberally." *Lewis v. Attorney General of United States.*, 878 F.2d 714, 722 (3d Cir. 1989) (citations omitted).  However, a court need not "credit a pro se litigant's bald assertions or legal conclusions." *Day v. Fed. Bureau of Prisons*, 233 Fed. Appx. 132 (3d Cir. 2007) (internal quotations and citations omitted).

485 U.S. 982 (1988).  However, the act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights so long as the prisoner-plaintiff "was granted a hearing, and had the opportunity to rebut the unfounded or false charge." *Id.* at 952-53; *see also Creter v. Arvonio,* No. 92-4493, 1993 U.S. Dist. LEXIS 11016 at *7 (D.N.J. Aug. 5, 1993); *Duncan v. Neas,* No. 86-109, 1988 U.S. Dist. LEXIS 12534, at *5 (D.N.J. Aug. 30, 1988) (holding that the prisoner-plaintiff did not set forth a claim that his constitutionally protected liberty interested was violated by a corrections officer's filing of a false charge against him when he was afforded the procedural due process protections of a hearing) (citing *Hanrahan v. Lane*, 747 F.2d 1137 (7th Cir. 1984).

In the instant case, Plaintiff simply alleges that C.O. Davis and Sergeant Abrams filed a false charge against him. (*See* Decl. at ¶¶ 11-20). He does not allege that he did not receive the procedural due process protections of a hearing to dispute this charge.  As such, Plaintiff has failed to set forth facts sufficient to demonstrate the likelihood that he will prevail at a final hearing with respect to his Fourteenth Amendment claim.

As noted above and by Judge Bongiovanni, Plaintiff has failed to put forth any evidence at all regarding his Eighth Amendment claims.[3]  As such, the Court adopts, as modified, the conclusion reached by Judge Bongiovanni with respect to Plaintiff's failure to demonstrate a likelihood that he will prevail at a final hearing.

---

[3]Further, it appears that Plaintiff also alleges that Defendants have also denied him the right to congregate with other members of his religious community. (Pl.'s Mem. of Law in Support in Br. at 4). Plaintiff does not put forth any evidence in support of this contention to demonstrate the likelihood that he would prevail at a final hearing on this issue as well.

### b. Whether Plaintiff Will Be Irreparably Injured By Denial of the Relief

Plaintiff also argues that Judge Bongiovanni erred in determining that Plaintiff had failed to demonstrate that he will suffer irreparable harm if a preliminary injunction is not issued. In the Objection, Plaintiff does not make any specific arguments with respect to the Report and Recommendation's finding on this prong. Instead, he states that "[w]hile their [*sic*] motion was pending Plaintiff suffered irreparable harm" because "[o]n November 14, 2008, [the] New Jersey Supreme Court denied his Petition for Certification." (Objection at 2). Plaintiff also asserts, without support to any documentation, that the threat of injury is real and immediate. *Id.*

"In general, to show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. Economic loss does not constitute irreparable harm." *Conquest v. Hayman,*, No. 07-2125, 2009 U.S. Dist. LEXIS 34398, at *8-*9 (D.N.J. Apr. 23, 2009) (quoting *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (citations and quotations omitted). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Id.* at 9 (quoting *Kos Pharms. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (citation and quotation omitted). "Further, irreparable harm must be of a peculiar nature and incapable of pecuniary measurement." *Id.* (citing *Pharms*, 369 F.3d at 727. More than a mere risk of irreparable harm must be demonstrated; rather, there must a clear showing of immediate irreparable injury or a currently existing actual threat. *Id. Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980). The "key aspect of this prerequisite is proof that the feared injury is irreparable; mere injury, even if serious or substantial, is not sufficient." *United States v. Commonwealth of Pennsylvania*, 533

F.2d 107, 110 (3d Cir. 1976)  As Judge Bongiovanni reasons, "an injunction may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights[.]" (Report and Recommendation at 7 (citing *Barkley v. Ricci*, No. 07-2760, 2007 U.S. Dist. LEXIS 92180, at *3-4 (D.N.J. Dec. 17, 2007) (internal quotation and editing marks omitted).  "A showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a clear showing of immediate irreparable harm." *Campbell Soup Co. v. Conagra*, 977 F.2d 86, 91 (3d Cir. 1992) (internal quotations omitted, emphasis added); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir.2000) (harm may not be speculative).

As Judge Bongiovanni notes, in his Motion Plaintiff cites several cases from various circuits for the proposition that he is suffering irreparable harm due to C.O. Davis and Sergeant Abrams alleged acts of retaliation.  (Pl.'s Mem. of Law in Support in Br. at 3).  While some of these cases do stand for the proposition that a party seeking injunctive relief for a constitutional right violation need only make a colorable claim that such a violation occurred in order to show irreparable harm, *see e.g. Conn. Dep't. of Envtl. Protect. v. OSHA* 356 F.3d 225, 231 (2nd Cir. 2004), *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2002), none of these cases are from the Third Circuit and therefore are not controlling.  *See* Pl.'s Mem. of Law in Support in Br. at 3-4.  Indeed, the Court of Appeals for the Third Circuit has held that constitutional harm does not necessarily constitute irreparable harm. *Ruiz v. New Garden Twp.,* 232 F. Supp. 2d 418, 429 (3d Cir. 2002), *rev'd on other grounds* 376 F.3d 203 (3d Cir. 2004) (citing *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) (holding that a simple assertion of First Amendment rights does not

11

automatically require a finding of irreparable injury). Further, as discussed above, Plaintiff has not put forth colorable claims that his rights under the First, Eighth or Fourteenth Amendments have been violated. Additionally, as Judge Bongiovanni correctly indicates, Plaintiff has not put forth any evidence in the Declaration or elsewhere regarding the nature of this alleged irreparable harm. Plaintiff's only other statements regarding this issue are that his "condition will deteriorate" should an injunction not be issued; that he is threatened with irreparable harm because "of the nature of the on-going problem;" and that "the retaliation is subjecting plaintiff to the unnecessary pain [*sic*], state of excitement and potential to great harm and injury [*sic*]." Pl.'s Mem. of Law in Support in Br. at 3. This is insufficient to sustain a finding that Plaintiff will suffer immediate irreparable injury if an injunction is not issued. Neither does Plaintiff's new assertion regarding the Supreme Court of New Jersey's denial of his petition for certification, which does not make the threat of harm anymore immediate or irreparable. (Objection at 2). Thus, the Court adopts, as modified, the conclusion reached by Judge Bongiovanni with respect to Plaintiff's failure to demonstrate that he will suffer irreparable harm if the preliminary injunction is not issued.

        c.        **Extent of Irreparable Harm to Defendants and the Public Interest**

With respect to the third factor, Plaintiff argues that Judge Bongiovanni erred because "the balance of hardship favors the plaintiff." (Objection at 2). "This Court cannot issue a preliminary injunction if doing so will result in irreparable harm to the Defendant." *Dorsey v. Black Pearl Books, Inc.*, No. 06-2940, 2006 U.S. Dist. LEXIS 83093, at *33 (D.N.J. Nov. 14, 2006) (citing *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstores, LLC*, 428

F.3d 504, 508 (3d Cir. 2005)).

The Report and Recommendation cites Defendants' argument that "it is an extraordinarily difficult task to maintain the safety and security of correctional facilities, as well as the inmates. . . [and therefore] Defendants should be given the discretion to which they are entitled by the courts." (Report and Recommendation at 8 (citing Defs.' Opp. to Pl.'s Motion at 5)). Defendants further assert in their Opposition that "prison officials are 'accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* at 6 (citing Defs.' Opp. to Pl.'s Motion at 5 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) quoting *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)). They also argue that the they have a "clear interest in maintaining the safety and security of the inmates at the [New Jersey State Prison], as well as the [New Jersey State Prison] facility and staff, and they are in the best position to determine the conditions of confinement necessary for those inmates serving life sentences without parole,"as Plaintiff is. (Defs.' Opp. to Pl.'s Motion at 6).

In the Objection, Plaintiff counters that while "prison officers are accorded wide-range deference to operate prison [*sic*]," "they should not be permitted to violate the law or violate inmates constitutional rights [*sic*]." (Objection at 3). Plaintiff further references a "detailed memorandum" which Plaintiff alleges he submitted to the NJDOC that outlines C.O. Davis' "illegal and unlawful conduct" and argues that the fact that NJDOC never denied or refuted these allegations is sufficient reason to grant injunctive relief.

As Judge Bongiovanni correctly notes, Defendants do not provide the Court with "an

13

abundance of detail as to the irreparable harm they would suffer if Plaintiff is granted a preliminary injunction" but instead cites several cases for the proposition that courts must afford prison officials a great deal of deference in the implementation of policies to preserve the internal order and discipline of such institutions. (Report and Recommendation at 9). However, as discussed above Plaintiff similarly did not put forth evidence regarding the irreparable harm that he was suffering in light of Defendants' actions. *See* Pl.'s Mem. of Law in Support in Br. at 3-4. As such and in light of the deference courts must afford prison officials in setting institutional policies as well as the direction of the PLRA to "give substantial weight to any adverse impact on . . . the operation of a criminal justice system caused by the preliminary relief," 18 U.S.C. § 3626(a)(2), the Court adopts, as modified, the conclusion reached by Judge Bongiovanni that injunctive relief would cause Defendants irreparable harm.

### d.     Public Interest

Plaintiff argues that Judge Bongiovanni erred in her evaluation of the public interest in issuing injunctive relief simply because "the relief sought will serve the public interest." (Docket No. 83, Objection). As noted above, courts considering granting injunctive relief must determine whether granting such relief is in the public's interest. *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996); *AT&T Co. v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994); *see also NutraSweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).

> With respect to this factor, Judge Bongiovanni correctly found that
>
>> it is in the public's interest best interest for Plaintiff's preliminary injunction to be denied. The public interest is better served when

14

> prisons are run efficiently and operated by prison officials. *Howard v. Skolnik*, No. 08-728 2008 WL 4568033[, at *4] (D.Nev. Oct. 8, 2008) citing *Turner v. Safley*, 482 U.S. 78, 85 (1987). If the Court were to grant the injunction and require the prison to require one of their Correctional Officers to "keep away" from one of the prisoners, it could disrupt the operations of the prison, which would not be in the public's interest and therefore Plaintiff also does not satisfy this factor.

(Report and Recommendation at 10). The Court agrees with Judge Bongiovanni's holding and, in light of the fact that Plaintiff has failed to demonstrate that he has suffered irreparable harm in connection with the complained of actions as well as the PLRA's direction to give substantial deference to any adverse impact potentially caused by preliminary relief, the Court adopts, as modified, the conclusion reached by Judge Bongiovanni that the injunctive relief sought would not be in the public interest.

### 2. Plaintiff is Not Entitled to a Hearing

Without explanation or support, Plaintiff further argues that Judge Bongiovanni erred in denying his request that a hearing be scheduled so that he may submit further evidence in support of his motion. (Objection at 3). However, as Judge Bongiovanni recognizes, the Court is not required to hear oral testimony when deciding a preliminary injunction motion. (Report and Recommendation at 11 n. 1 (citing *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3d Cir. 1990) (holding that the district court is not obliged to hold a hearing when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm.)) As discussed above, Plaintiff has failed to put forth a colorable factual claim on the merits. As such, the Court adopts the conclusion reached by Judge Bongiovanni that Plaintiff is not entitled to a hearing.

15

### III. CONCLUSION

For the above reasons, the Court: (1) overrules Plaintiff's objections to Magistrate Judge Bongiovanni's January 15, 2009 Report and Recommendation; and (2) adopts, as modified, the Report and Recommendation in whole. An appropriate form of order is filed herewith.

Dated: May 11, 2009

                                                 /s/ Garrett E. Brown, Jr.
                                              GARRETT E. BROWN, JR., U.S.D.J.